I.
This libel action arises from a complaint filed by Thomas Edgar Chatham d/b/a Edgar's Lounge, alleging that Gulf Publishing Company, Inc., through a series of articles appearing in two of its newspapers, falsely reported that police answered a disturbance call at his lounge on Howard Avenue in Biloxi, Mississippi.
The circuit court held, inter alia, that as a matter of law Chatham had not been libeled, and granted unto Gulf Publishing Company a summary judgment. We affirm.
 II.
The appellee, Gulf Publishing Company, publishes two newspapers on the Mississippi *Page 648 
Gulf Coast, a morning paper known as The Sun and an evening paper known as The Daily Herald. On the weekends the two newspapers are combined and published as The Saturday Paper andThe Sunday Paper, respectively. On March 15, 1982, The SundayPaper published a news story concerning Hershel H. Jernigan of Biloxi, Mississippi, who had been seriously injured in a fight the previous night. The story reported that the fight occurred at a Biloxi lounge and that Jernigan was found in critical condition by police at Edgar's Lounge, an establishment owned and operated by the appellant, Thomas Edgar Chatham. Jernigan died on March 15, 1982, and the March 16th edition of The Sun published a story of his death and the fact that his assailants had been charged with murder. The Sun article correctly stated that the alleged attack on Jernigan occurred "on a Biloxi Street about midnight Friday." On the same day, The Daily Herald published a similar story which reported that authorities found Mr. Jernigan in critical condition upon their arrival at the scene, the scene being Edgar's Lounge.
Chatham sued Gulf Publishing Company in a libel action seeking damages in the sum of $100,000.00, such damages being the result of the alleged libelous articles appearing in editions of the defendant newspaper. In his complaint Chatham alleged that the newspaper articles in question falsely imputed that a fight occurred at or within his place of business and were libelous in that they inferred that his business establishment was an unsafe environment for its patrons. Chatham further alleged that by reason of the publication of the allegedly false and defamatory statements, his business had been injured in its reputation and lost the good will and trade of many persons with whom he would have otherwise had a profitable business. The articles of which Chatham complains are the following:
 Biloxi man's condition critical following fight
 A Biloxi man was listed in critical condition Saturday night at Memorial Hospital at Gulfport where he was being treated for injuries apparently sustained during a fight at a Biloxi lounge.
 A spokesman for the Biloxi Police Department said officers found Hershel Jernigan, 57, of Hood Lane, in critical condition when they arrived at Edgar's Lounge on Howard Avenue about 3 a.m. Saturday. There apparently had been a fight, and Brent Strong and Paula Hudson, both 19 and both of Biloxi, were charged with aggravated assault in the incident; however, police said Jernigan appeared to have been a bystander.
 Strong and Hudson are being held under $10,000 bond each.
 Biloxian charged in death
 Nineteen-year-old Brent Strong of Biloxi has been charged with murder in the death of Hershel Jernigan, 57, also of Biloxi.
 Jernigan, 240 Hood Lane, died Sunday after he had undergone emergency surgery for head injuries Saturday, following an apparent fight where police said he was probably only a bystander.
 A Biloxi Police Department spokesman said officers found Jernigan in critical condition when they arrived at Edgar's Lounge on Howard Avenue about 3 a.m. Saturday.
 The spokesman said there had apparently been a fight, and both Strong and Paula Hudson, 19, Biloxi, had first been charged with aggravated assault following the incident. Strong's charge was changed to murder after Jernigan died.
Gulf Publishing Company answered the complaint denying that the articles attached to the complaint were libelous and interposed several defenses, including the defense of a good faith belief that the company published stories which were true, as legitimate news stories, and in the discharge of a duty of the press to publish news concerning matters of public interest and concern. Gulf admitted that its newspapers had indeed published the three articles in question.
It is undisputed that both Strong and Jernigan were in Edgar's Lounge on the night that the fight occurred. Rhonda *Page 649 
Flowers, one of Chatham's employees, testified that both Strong and Hershel Jernigan had been at Edgar's Lounge prior to the fight; Strong was asked to leave Edgar's Lounge because he was disorderly and using obscene language; Flowers heard the commotion from where she was positioned by an open door; Flowers actually telephoned the Biloxi Police Department to report that a fight was occurring just down the street from Edgar's Lounge; the fight which Flowers reported to the Biloxi Police Department occurred approximately one-half to two-thirds block due east of Edgar's Lounge on Howard Avenue, Biloxi; and the Biloxi Police Department did actually go to Edgar's Lounge during its investigation of the fight. It is further undisputed however, that the fight occurred and the fatal blow was struck some 108 paces or two-thirds a block away from the lounge owned by Chatham. Obviously, this is contrary to what was reported in TheSunday Paper or in the evening edition of The Daily Herald.
Chatham now contends that the accuracy and defamatory nature of these articles were issues of fact to be decided by a jury, not a trial court.
Gulf Publishing Company submits that the published articles do not attack the character or reputation of Chatham or in any other way defame him and, therefore are not libelous.
After counsel presented argument in support of their respective positions, the circuit court granted summary judgment, finding that there was no genuine issue as to any material fact. Feeling aggrieved, Thomas Edgar Chatham has appealed to this Court for relief, and has set forth three separate propositions under what is essentially one assignment of error, that being:
 III.
THE TRIAL COURT ERRED AS A MATTER OF LAW IN ORDERING SUMMARY JUDGMENT IN FAVOR OF GULF PUBLISHING COMPANY.
Essentially, the only question before us is whether the published articles attack the character or reputation of Chatham or in any way defame him and, therefore, are libelous? A claim of defamation requires that Chatham establish:
 (1) a false and defamatory statement concerning another;
 (2) an unprivileged publication to a third party;
 (3) fault amounting at least to negligence on the part of the publisher; and
 (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.
Restatement (Second) of Torts, § 558 (1977).
With the above in mind, the question before this Court is whether the statements complained of were defamatory. See,Fulton v. Mississippi Publishers Corporation, 498 So.2d 1215
(Miss. 1986); Ferguson v. Watkins, 448 So.2d 271, 275 (Miss. 1984). If we determine that the statement was not defamatory, the judgment below should be affirmed. It is the function of the trial court to determine whether the communication complained of "bears the meaning ascribed to it by the plaintiff, and if so, whether this meaning is defamatory." Fulton at 1216; Brewer v.Memphis Publishing Company, Inc., 626 F.2d 1238, 1245 (5th Cir. 1980); Manasco v. Walley, 216 Miss. 614, 630, 63 So.2d 91, 96 (1953); Restatement (Second) of Torts, § 614 (1977). "If the court decides against the plaintiff upon either of these questions, there is no further question for the jury to determine and the case is ended." Restatement (Second) of Torts, § 614 (1977). Should the trial court determine, however, that the language is "ambiguous, of doubtful import, or susceptible to two or more interpretations, its actionability must ordinarily be decided by the jury under appropriate instructions from the court." Brewer at 1245, citing Cameron Bros. v. Posey,237 Miss. 432, 115 So.2d 138 (1959).
In order to determine whether a statement is defamatory we look to the common law rule that *Page 650 
 Any written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in the public esteem or lower him in the confidence of the community is actionable per se. . . .
Fulton at 1217; See also, Whitten v. Commercial DispatchPublishing Co., Inc., 487 So.2d 843, 845 (Miss. 1986); Fergusonv. Watkins, 448 So.2d 271, 275 (Miss. 1984); Gulf PublishingCompany, Inc. v. Lee, 434 So.2d 687, 695 (Miss. 1983); NatchezTimes Publishing Co. v. Dunigan, 221 Miss. 320, 326,72 So.2d 681, 684 (1954); Conroy v. Breland, 185 Miss. 787, 797,189 So. 814, 815 (1939).
In Ferguson we refined the common law rule to require that
 The words used must have been clearly directed at the plaintiff [and] the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture. Ferguson v. Watkins, 448 So.2d 271, 275 (Miss. 1984).
Fulton, supra.
In light of the foregoing, a determination must be made as to whether the publication complained of was false and defamatory. As stated previously it is undisputed that the fight did not actually occur at Edgar's Lounge, but that it occurred some two-thirds of a block away. The question of whether the language was defamatory is a much more difficult one to answer even in light of the above standard. It is recognized in Mississippi that injury to one's business reputation can be the subject of a libel action. See Brewer v. Memphis Publishing Company, Inc.,626 F.2d 1238 (5th Cir. 1980); Sheffield v. Journal PublishingCompany, 211 Miss. 294, 51 So.2d 479 (1951). This of course leaves the question as to whether the words as written could have injured the reputation of Chatham's business.
We must measure the allegedly defamatory publication under theFerguson standard. Therefore, we must determine (1) whether the words used were clearly directed at Chatam; and (2) whether the defamation was clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture. Obviously, if the words complained of fall under either prong of the test, they are not defamatory.
The evidence reflects that the articles address the assault upon and eventual death of Hershel Jernigan. The article therefore is directed toward Brent Strong and Hershel Jernigan, not Edgar's Lounge. The more difficult burden placed upon Chatham is set forth in prong two of the Ferguson test. Was the defamation clear and unmistakable from the words themselves or was the alleged defamation the product of innuendo, speculation or conjecture? We find that under the test set forth inFerguson, the answer clearly seems to be that without the use of innuendo, speculation, or inference, no defamation is present in the articles of which Chatham complains. Considering the articles in this light, we find no language therein which would tend to injure Chatham's reputation, expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in the public esteem, or lower him in the confidence of the public community.
Although we hold as a matter of law that the articles do not defame Chatham, Gulf Publishing Company was not without error. "Newspapers have no particular privilege, but are liable for what they publish in the same manner as others." 53 C.J.S., Section 121. "This is true according to the majority view, even though the news items published were obtained from the regular sources of a news gathering agency." 50 Am.Jur.2d Section 251. Therefore, any newspaper reporter should exercise the proper care in reporting news items and if there is any question whatsoever in the mind of that reporter as to the facts given him, he should not rely on those facts as given, but exercise the initiative and motivation to go to the location of the event and perform first hand investigation. This is especially true in a situation such as the one presented in this *Page 651 
case where there were three articles published, the second one of which being factually correct. It is obvious that the true story was easily attainable and this litigation could have been avoided had the editors and reporters exercised due care in the performance of their duties. Notwithstanding this, and in light of the authorities presented here, we find that the judgment of the lower court should be affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P. JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.